IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | CRIMINAL NO. 08-69 |
| v. | : | |
| | : | |
| | : | |
| NILANDONE VONGNARATH | : | |

**MEMORANDUM AND ORDER**

AND NOW, this 19th day of May, 2008, upon consideration of Defendant's Motion to Suppress Statements (Docket No. 8, Omnibus Pretrial Motion, Mot. No. 6), the Government's Opposition thereto (Docket No. 9), the suppression hearing before this court on April 11, 2008, the Government's Supplemental Response (Docket No. 29), and Defendant's Supplemental Memorandum (Docket No. 30), it is hereby ORDERED that Defendant's Motion to Suppress Statements is DENIED.

Law enforcement officers are only required to give Miranda warnings when the person being questioned is in custody. Miranda v. Arizona, 384 U.S. 436, 468 (1966). "A person is in custody when he either is arrested formally or his freedom of movement is restricted to "the degree associated with a formal arrest. For a person to be in custody when he has not been arrested, something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates that they would not have heeded a request to depart or to allow the suspect to do so." U.S. v. Willaman, 437 F.3d 354, 359 (3d Cir. 2006) (internal citations and quotations omitted). To determine whether a person was in custody,

courts consider, inter alia, the following factors:

>(1) whether the officers told the suspect he was under arrest or free to leave;
>
>(2) the location or physical surroundings of the interrogation;
>
>(3) the length of the interrogation;
>
>(4) whether the officers used coercive tactics such as hostile tones of voice, the display of weapons, or physical restraint of the suspect's movement; and
>
>(5) whether the suspect voluntarily submitted to questioning

Id. at 359-360.  Whether a person was the focus of an investigation does not implicate that person's right to Miranda protection.  U.S. v. Mitlo, 714 F.2d 294, 297 (3d Cir. 1983).  See also Steigler v. Anderson, 496 F.2d 793, 798 (3d Cir. 1974) ("This Court and other circuits have held that Miranda abandoned the 'focus' theory. . . .").

In this case, ten pounds of marijuana were seized from the Defendant's vehicle on June 13, 2007.  On that date, the Defendant was taken to Philadelphia Police Headquarters where he was processed and released.  Following the Defendant's arrest, Special Agent Calam spoke with the Defendant's attorney and was aware that the Defendant was represented by counsel.  On August 22, 2007, the Defendant gave inculpatory statements to Drug Enforcement Agency ("DEA") agents regarding the circumstances leading to his arrest on June 13, 2007.  On February 6, 2008, the Defendant was charged with a two-count indictment.  Count I charges conspiracy to distribute approximately 100 pounds of marijuana, and Count II charges that possession with intent to distribute approximately 10 pounds of marijuana.

In a suppression hearing before this court, DEA Special Agent Calam testified that he and

three other DEA agents stopped the Defendant in his car on August 22, 2007. He testified that he identified himself as a DEA agent and told the Defendant he was not under arrest. He testified that he informed the Defendant that he was going to seize the vehicle the Defendant was driving on June 13, 2007, and that had contained the seized marijuana that is the subject of the instant indictment. Special Agent Calam testified that he told the Defendant he wanted to ask him some questions regarding his involvement with drugs and the events of June 13, 2007; that he told the Defendant the conversation would be voluntary; and that the Defendant agreed to be questioned and requested that they return to the Defendant's home so as not to alarm the Defendant's wife and children who were passengers in the vehicle during the stop. Special Agent Calam testified that he followed the Defendant to the Defendant's home where they had a conversation at the Defendant's kitchen table for a little more than an hour. During that conversation, the Defendant made inculpatory statements to DEA agents. The Defendant was not arrested or placed under arrest on that date and no one read Miranda warnings to him.

    The court finds the Defendant's interrogation was not custodial, and that the DEA were not required to give him Miranda warnings. He was not "taken into custody or otherwise deprived of his freedom in any significant way." Miranda, 384 U.S. at 444. The record does not show that the agents used physical force or restraint or verbally intimidated the Defendant. See Willaman, 437 F.3d at 360. They did not display weapons or interrogate him at length. Id. There is no evidence that Defendant was not free to leave or to terminate the interrogation. The Defendant chose to be questioned in his own home where he went with the DEA agents at his own request. "When a person is questioned on his own turf, . . . the surroundings are not indicative of the type of inherently coercive setting that normally accompanies a custodial

interrogation." United States v. Czichray, 378 F.3d 822, 827 (8th Cir. 2004), cited with approval in Williaman, 437 F.3d at 360.

There are no other circumstances in the record to indicate that the Defendant was the subject of a custodial interrogation. "Therefore, it would be unreasonable to conclude that [the Defendant's] incriminating statements to the federal agents were not freely and voluntarily made at a time that he was not in custody." Williaman, 437 F.3d at 360. Accordingly, Miranda is not implicated here and Defendant's August 22, 2007, statements were not obtained in violation of his Fourth or Fifth or Sixth Amendment rights. Id. Additionally, there is nothing in the record to support a proposition that the Defendant's June 13, 2007, statements were obtained in violation of his Fourth or Fifth or Sixth Amendment rights.

BY THE COURT:

S/ James T. Giles
J.